# IN RE SHELDON G.*
## (14063)

PETERS, C. J., SHEA, CALLAHAN, GLASS and COVELLO, Js.

Argued September 25—decision released December 4, 1990

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 2026, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Supreme Court.

Reporter of Judicial Decisions

*Bruce L. Levin,* with whom, on the brief, was *Serge G. Mihaly,* for the appellant (movant).

*Barbara J. Sheedy,* for the appellee (respondent).

*Paul C. Fassler,* for the appellee (respondent's father).

PETERS, C. J. This appeal concerns the scope of discretion that General Statutes § 46b-124 confers upon a trial court to order disclosure of juvenile court records to "any third party."[1] The movant, who was sex-

---

[1] "[General Statutes] Sec. 46b-124. (Formerly Sec. 51-305) RECORDS. (a) All records of cases of juvenile matters as defined in section 46b-121, or any part thereof, including studies and reports by probation officers, social agencies and clinics, shall be confidential and for the use of the court in juvenile matters, and open to inspection or disclosure to any third party, including bona fide researchers commissioned by a state agency, only upon order of the superior court, except that (1) such records shall be available to the attorney representing the child or youth, his parents or guardian and to an adult adopted person in accordance with the provisions of part II of chapter 778 and to another court under the provisions of section 46b-111 and (2) information obtained from such records concerning the disposition of a criminal case shall be available to the victim of the crime provided such information shall not identify the juvenile involved, except that (1) the identity of the child or youth may be released to the victim upon written application by such victim to the court stating intent to bring a civil action for loss or damage resulting from such act; and (2) the identity of a child or youth adjudicated a delinquent may be released to the victim upon written application by such victim to the court. The delinquency records or any part thereof of any person who has not attained the age of twenty-one shall also be available to any judge of said court for consideration in sentencing such person if he has been convicted of a felony as defined in section 53a-25 or in deciding whether or not to grant youthful offender status to such person if he has committed a felony for which youthful offender status may be granted. Such delinquency records or any part thereof of a person who has not attained the age of twenty-one shall also be available to an adult probation officer, if requested by him, for the purpose of the investigation required under section 54-76d or 54-91a with respect to the sentencing of such person or the granting of such youthful offender status. Any record

ually assaulted by the respondent, seeks disclosure of all juvenile court records relating to the respondent, Sheldon G., to assist her in a tort action, one count of which is directed against the respondent's father and is grounded in his allegedly negligent failure to secure recommended psychiatric treatment for his son. The trial court, *Burns, J.,* rejected the movant's contention that her request for disclosure fell within the bounds of § 46b-124. The movant then appealed the trial court's judgment to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023. Although we do not subscribe to the trial court's reasoning in its entirety, we affirm its judgment.

The facts are undisputed. On September 29, 1987, the respondent, Sheldon G., then sixteen years old, broke into the movant's home, struck her with a golf club, and then forced her to have sexual intercourse with him. On September 28, 1988, in an adult criminal proceeding in the Superior Court, he pleaded guilty[2] to sexual assault in the first degree, in violation of General Statutes § 53a-70 (a), in relation to his attack on the movant. On the same date he also pleaded guilty to an unrelated burglary, in violation of General Statutes § 53a-101. On April 28, 1989, the trial court, *Cur-*

---

or any part thereof forwarded by said court or any of its employees to any persons, governmental and private agencies, and institutions, shall not be disclosed, directly or indirectly, to any third party save upon order of said court or except in the report required under section 54-76d or 54-91a.

"(b) Any complaint or any information based on such complaint transferred from the jurisdiction of the circuit court to the jurisdiction of the juvenile court prior to October 1, 1971, shall remain in the superior court as a confidential record and shall not be disclosed except upon order of a judge of the superior court."

[2] Although the respondent pleaded guilty to the criminal charges under the doctrine of *North Carolina* v. *Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), thereby refusing to admit the factual basis of all of the state's allegations, he subsequently admitted the conduct recounted in this summary in his responses to the movant's request for admissions in the underlying civil action.

*ran, J.,* imposed on Sheldon G. an effective sentence of forty years imprisonment, to be suspended after twenty-five years with five years probation.

The movant instituted a civil suit for damages against Sheldon G. and his father in November, 1988. Counsel for Sheldon G. in the civil action subsequently provided the movant's counsel with medical and psychological reports regarding his client. One of these reports was a psychosocial history prepared by Whiting Forensic Institute (Whiting) in March, 1989, for the youth's sentencing in the Superior Court. That report indicated that Sheldon G. had "a history of sexual offending behaviors" and referred, in turn, to an earlier report, dated July 23, 1987, from "Connections Inc.," a counseling and treatment facility in Middletown, which recommended placement in a treatment program to prevent "more serious sexual misbehavior." The Whiting report noted that these treatment recommendations had not been "activated in a timely manner due to numerous canceled appointments by parents according to [Department of Children and Youth Services] staff."

The movant inferred from the Whiting report the existence of records of adjudications, in either neglect or delinquency proceedings regarding Sheldon G., in the Superior Court for Juvenile Matters. She thereupon moved for disclosure of any such records that might exist, arguing that she had demonstrated a "compelling need" for the records because they "[might] well disclose evidence or lead to evidence" that Sheldon G.'s father had "long had knowledge of his son's aberrant sexual conduct." Although counsel for Sheldon G. had provided the movant with the Whiting report and with an authorization for the release of medical records, counsel for the movant acknowledged at oral argument that he had not used the authorization to seek discov-

ery of such records from service providers,[3] nor had he attempted to depose either Sheldon G. or his father on the movant's behalf. The movant instead contended that any privilege or privacy right that Sheldon G. had possessed in regard to any juvenile record was attenuated by his release of medical records and by the fact that he would be incarcerated for many years.

The movant maintained at trial, as she does here upon appeal, that § 46b-124 confers "broad discretion" upon the Superior Court for Juvenile Matters to order disclosure of juvenile records to "any third party" having an interest therein. She notes that the predecessor of this statute, General Statutes (1958 Rev.) § 17-57, vested such discretion in the juvenile court, and she construes the subsequent statutory amendments as effectively specifying the circumstances in which disclosure is mandatory rather than discretionary. The trial court, to the contrary, interpreted the present statute to permit disclosure only in the circumstances enumerated in its various exception clauses or when required by overriding constitutional concerns such as the right to confront witnesses in a criminal proceeding.

We have not previously had the occasion to consider the scope of the discretionary authority vested in the trial court by § 46b-124. Our analysis of the statute is divided into two parts. First, we must decide whether the statute affords the trial court any discretion to permit disclosure of the records of juveniles in circumstances other than those either enumerated as exceptions to the rule of confidentiality or required for the protection of constitutional rights. Second, if we determine that the trial court continues to have residual discretion to order disclosure, we must decide whether that

---

[3] We express no opinion about the extent to which particular service providers such as psychiatrists may invoke a privilege against disclosure of communications that Sheldon G. may have made to them.

discretionary authority encompasses the request of the movant in this case. It is our conclusion that the statute's strong presumption of confidentiality, although it allows some room for discretion, can be overcome only by a showing of compelling need, which this movant has not made. Accordingly, we affirm the judgment of the trial court.

I

We turn first to the language, history and policy concerns of § 46b-124 to determine whether the statute affords the trial court discretion to disclose information from juvenile records to parties other than those to whom the statute expressly grants access. After its most recent revision, the statute provides, in relevant part: "(a) All records of cases of juvenile matters as defined in section 46b-121, or any part thereof, including studies and reports by probation officers, social agencies and clinics, shall be confidential and for the use of the court in juvenile matters, and open to inspection or disclosure to any third party, including bona fide researchers commissioned by a state agency, only upon order of the superior court," with certain exceptions that are not directly applicable to this case. On its face, the statute enjoins confidentiality without precisely delineating the scope of the disclosure that the Superior Court may nonetheless order. In light of this patent ambiguity, it is appropriate for us to consider the legislative history of the statute and the policy that it was intended to further. *State* v. *Mattioli,* 210 Conn. 573, 576, 556 A.2d 584 (1989).

In construing a statute, "our goal is to 'ascertain and give effect to the apparent intent of the legislature.' " *State* v. *Champagne,* 206 Conn. 421, 428, 538 A.2d 193 (1988), quoting *State* v. *Blasko,* 202 Conn. 541, 553, 522 A.2d 753 (1987). To discern the intent of the legislature, we look first to the words of the statute. *State*

v. *Kozlowski,* 199 Conn. 667, 673, 509 A.2d 20 (1986). We normally resolve any ambiguity in the statutory language "by turning for guidance to the legislative history and the purpose the statute is to serve." *State* v. *Champagne,* supra; *State* v. *Kozlowski,* supra.

The history of § 46b-124 begins with the enactment of legislation in 1921 that created a separate system of juvenile courts. That legislation directed that the records generated by juvenile court proceedings be kept separately from other court records, but at the same time it implicitly conferred upon juvenile court judges broad discretion to open those records for "public inspection."[4] Public Acts 1921, c. 336. A legislative amendment in 1941 limited public access to juvenile records "only to persons having a proper interest therein and upon order of the court." General Statutes (Sup. 1941) § 283f.[5] The 1941 amendment, however, continued to authorize judicial discretion to determine precisely who might have "a proper interest" in the information contained in juvenile court records. Juvenile court judges construed this provision to authorize disclosure of juvenile records "whenever in the opinion of the court it is in the best interests of a child." Practice Book, 1963, § 1137 (presently incorporated in amended form in Practice Book § 1061).

In 1969, the legislature significantly amended the juvenile records statute in order to strengthen its confidentiality provisions. The 1969 amendment expressly

---

[4] Public Acts 1921, c. 336, § 2, provided in relevant part: "[The juvenile court in each jurisdiction] shall keep separate records, which, including the records of probation officers, shall not be open to public inspection except upon the order of the court. Such records pertaining to any particular case shall be open at all times to the inspection of the child concerned and its parent or guardian." The statute as then enacted provided no other standards to limit or guide the juvenile court judge's exercise of discretion over public access to the records.

[5] This amendment was subsequently codified as General Statutes (1958 Rev.) § 17-57.

provided that records of cases brought before the juvenile courts, "including studies and reports by probation officers, social agencies, and clinics, *shall be confidential and for the use of said court,* and open to inspection or disclosure to any third party only upon order of said court." (Emphasis added.) Public Acts 1969, No. 794, § 3. Although the amended statute was not designed to eliminate all judicial discretion to order disclosure, it was expected to tighten the authority of the court to prevent indirect disclosure by others. The proponents of the amendment, including an experienced juvenile court judge, urged its enactment "to clarify and strengthen the present provisions with regard to confidentiality." Conn. Joint Standing Committee Hearings, Judiciary and Governmental Functions, Pt. 1, 1969 Sess., p. 49, remarks of Judge Margaret C. Driscoll.[6]

---

[6] Although we usually limit our inquiry of legislative history to remarks made during the debates on the floor of the House of Representatives or the Senate; see *State* v. *Golino,* 201 Conn. 435, 445, 518 A.2d 57 (1986); we have occasionally considered committee testimony when it contains particularly compelling evidence about the problem, issue or purpose underlying a statute. *Mahoney* v. *Lensink,* 213 Conn. 548, 559 n.15, 569 A.2d 518 (1990). In this case, a particularly persuasive reason for considering this testimony exists: the omnibus bills under consideration by the committee had been proposed by the judges of the juvenile court themselves. Conn. Joint Standing Committee Hearings, Judiciary and Governmental Functions, Pt. 1, 1969 Sess., p. 38, remarks of Judge Thomas D. Gill. The representative who summarized the bill on the floor of the House of Representatives noted that it "embodies a concurrence among all the judges of the Juvenile Court" as to changes needed in existing laws. 13 H.R. Proc., Pt. 11, 1969 Sess., p. 4980, remarks of Representative James T. Healey.

According to Judge Driscoll, who testified at length before the Joint Standing Committee on the Judiciary and Governmental Functions about several pending bills designed to revise juvenile justice procedures, the juvenile court judges had a particular concern about preserving the court's authority over the confidentiality of juvenile records. She noted that agencies or institutions that had received juvenile records pursuant to a court order had subsequently released those records to other parties without seeking another court order authorizing the second disclosure. One purpose of the amendment concerning confidentiality of records was to preclude such redisclosure, even to other service providers working with the affected juve-

After the enactment of the 1969 amendment strengthening the presumption of confidentiality of juvenile records, the legislature in subsequent years turned its attention to countervailing interests. Some of the later amendments were directly related to the welfare of the juvenile whose records might be at issue. In 1977, for instance, as part of a separate enactment intended to make available to adult adopted persons information concerning their genetic parents, the legislature created an exception to the confidentiality bar to enable an adult to gain information about his or her own personal history. Public Acts 1977, No. 77-246, § 11. Similarly, in 1978, as part of the legislature's adoption of the Uniform Child Custody Jurisdiction Act, the legislature authorized juvenile courts to release information contained in juvenile records to courts for custody proceedings in other jurisdictions. Public Acts 1978, No. 78-318, § 27. Other amendments balanced the need to protect the juvenile from reputational harm in order to facilitate rehabilitation against concerns for the safety and welfare of the public. One such amendment, in 1977, added a provision requiring the juvenile court to make records of delinquency adjudications available to judges and probation officers in the adult criminal justice system for the purposes of determining eligibility for youthful offender status and of sentencing persons under twenty-one. Public Acts 1977, No. 77-486.

The circumstances and discussion surrounding the adoption of these various amendments do not in every case reveal whether the legislature intended to limit, to expand, or merely to clarify the existence of judicial discretion to disclose information in juvenile records. In at least two instances, however, the legislative

nile, without a specific order from a juvenile court judge. Conn. Joint Standing Committee Hearings, Judiciary and Governmental Functions, Pt. 1, 1969 Sess., pp. 49–50, remarks of Judge Margaret C. Driscoll.

record and contemporary commentary on amendments to the statute provide direct insight into the effect of the revision on the discretionary power of the court. These instances, moreover, are highly relevant to the issue raised by the movant in this case: the amendments define the access to juvenile records available to victims of juvenile offenses who seek information for the purpose of bringing a civil suit for damages.[7]

In 1980, in response to complaints by victims of offenses committed by juveniles, the legislature sought to amend the confidentiality statute to give victims access to certain information regarding juvenile offenders. As originally drafted, the amendment would have provided in relevant part that "[t]he court in its discretion, in any case, may permit an inspection of any papers or records and such papers and records or any part thereof shall be made available to . . . (3) the victim of the crime, if requested by him prior to the erasure of such papers and records." Raised Committee Bill No. 5073, Feb. Sess., 1980. A representative of the victim witness assistance unit of the office of the chief state's attorney testified before the judiciary committee in support of the amendment, observing that the state's attorneys unanimously agreed that victims of offenses committed by juveniles should be entitled to learn the disposition of the cases in which they were involved. He noted, however, that the proposed bill, as drafted, would provide victims with access to "all the information that's in the various court records." Conn. Joint Standing Committee Hearings, Judiciary and Governmental Functions, Pt. 2, 1980 Sess., pp. 397–98, remarks of Dennis Barry. In the view of

---

[7] We note, as did the trial court, that the statutory exceptions regarding the access of victims to information in juvenile records are not directly applicable to the movant in this case. The respondent was no longer a juvenile when he attacked the movant, and the records of his arrest and conviction in relation to that crime are not "records of cases of juvenile matters" but rather public records of the Superior Court's adult criminal proceedings.

the state's attorneys, such access was unnecessary and should not be permitted. Similarly, a spokesperson for the Connecticut Council for Victim Witness Advocates, who urged the legislature to adopt the amendment to recognize the right of victims to know "what the criminal justice system has decided is an appropriate response to their offenders," added: "We do not request that victims have access to case files, fingerprints or records, but merely that they be informed of the court's final disposition in their case." Conn. Joint Standing Committee Hearings, Judiciary and Governmental Functions, Pt. 2, 1980 Sess., pp. 432–33, remarks of Patricia Weel. Following this testimony, the legislature revised the proposed bill to eliminate its reference to judicial discretion and to preclude a victim's access to a juvenile's entire record. As finally enacted, the amendment provided in relevant part: "All records of cases of juvenile matters . . . shall be confidential and for the use of the court in juvenile matters, and open to inspection or disclosure to any third party . . . only upon order of the superior court, except that . . . (2) information obtained from such records concerning the disposition of a criminal case shall be available to the victim of the crime provided such information shall not identify the juvenile involved." Public Acts 1980, No. 80-165, § 1.

The judges in the Superior Court for Juvenile Matters immediately perceived the effect of this amendment as a limitation on their residual discretion to order disclosure.[8] The legislature responded in 1982 by revis-

---

[8] "Previously, the judge had total discretion in releasing information as to the identities of juveniles referred or the disposition of the cases. Many judges exercised this discretion to release information necessary to facilitate civil recovery from the child's parents as permitted by Conn. Gen. Stat. § 52-572. This discretion was limited by Pub. Act 80-165, which now mandages that ' . . . information obtained from such records concerning the disposition of a criminal case shall be available to the victim of the crime . . . .' Unfortunately for those victims who are seeking to recover from

ing the confidentiality statute to permit judicial disclosure of the *identity* of juvenile offenders to their victims under specified circumstances.[9] Public Acts 1982, No. 82-140, § 1.

The legislative history of the 1982 amendment sheds further light on the scope of the residual judicial discretion to disclose, for two reasons. First, the legislators supporting the revision expressly acknowledged that the 1980 amendment had abrogated the residual discretion of the juvenile court to make information from a juvenile's records available to a victim for the purpose of facilitating a civil suit. See, e.g., 25 H.R. Proc., Pt. 2, 1982 Sess., p. 479, remarks of Representative Richard D. Tulisano ("[t]he legislation before us, in effect, tries to bring the law back to what it was a couple years ago, before we tried to clean it up"). Second, despite this express awareness that the earlier act had curtailed judicial discretion, the legislature did not simply repeal its earlier enactment. Rather, it refined— through heated debate and a number of amendments to the proposed bill—the guidelines it wished to impose upon trial courts for the release of one very specific piece of information, the name of the juvenile offender.[10] The 1982 amendment revised the confidentiality statute, § 46b-124, to its present form.

the child's parents, however, the new law goes on to further restrict the judge's discretion to identify the child involved: '. . . provided such information shall not identify the juvenile involved.' What this language does to the judge's general discretion granted in the original statute may have to be resolved by judicial interpretation or legislative clarification in the future." F.S. Brenneman, "Juvenile Law: Highlights of 1980," 55 Conn. B.J. 82, 88 (1981).

[9] First, the court was granted discretion to release the name of any juvenile offender to a victim who made a written application stating his intent to bring a civil suit, and second, the court was granted discretion to reveal the identity of a juvenile who had been adjudicated a delinquent to the victim of the juvenile's delinquent conduct, regardless of whether the victim intended to bring suit.

[10] The original draft of the 1982 bill provided for the release of the name of the juvenile charged with the commission of a delinquent act only if the

In sum, the debate surrounding the precise nuances of the amendments enacted in 1980 and 1982 amply demonstrates the legislature's intent to limit strictly the type of information available to victims of juvenile offenses. While the legislative history of the statute as a whole does not support the trial court's conclusion that the legislature intended to eliminate all residual judicial discretion to permit disclosure in circumstances other than those enumerated in the various exceptions clauses, the history of these amendments does establish the boundaries for disclosure of information to victims for the purposes of civil litigation. The 1980 amendment specifically rejected a draft version that would have opened a juvenile's records for the purposes of civil discovery. The 1982 amendment did not restore in its entirety the discretion abrogated by the 1980 changes; rather, it carefully provided two additional

victim made a written application stating his intention to bring a civil suit. At the recommendation of the judicial department, the bill was revised to permit disclosure only when a referred juvenile had been found guilty of the act by an adjudication of delinquency. Representative Tulisano, opposing an amendment to the 1982 bill that would have permitted a victim to obtain the referred offender's name even if the victim did not intend to sue and even if the offender had not been adjudicated delinquent in regard to the offense, argued that strict safeguards against disclosure were required because the standards of probable cause for referring a child to the juvenile court were less stringent than those imposed in the adult criminal justice system, and the possibility of mistaken referrals was accordingly higher. 25 H.R. Proc., Pt. 2, 1982 Sess., pp. 485–86, remarks of Representative Richard D. Tulisano. Representative Tulisano supported a subsequent amendment, however, that enabled a victim to obtain the name of a referred juvenile before adjudication only if the victim stated his intention to bring suit, and after adjudication for any purpose. In effect, Representative Tulisano characterized the two provisions as alternative distributions of the burden of proof: in the first alternative, the victim could obtain the name only if he intended to sue, in which event he would bear the burden of proving that the accused juvenile had in fact committed the offense, while in the second, the state would have borne the burden of proving the accused juvenile's actual commission of the delinquent act. 25 H.R. Proc., Pt. 6, 1982 Sess., p. 1989, remarks of Representative Richard D. Tulisano. This amendment was ultimately adopted.

circumstances in which a trial court could release one specific piece of information from a juvenile's record—the name of the juvenile—in order to facilitate a civil suit.

We conclude, accordingly, that the present statute still affords discretion to the court to disclose information in circumstances neither enumerated in the statutory exceptions nor mandated by constitutional due process. The legislature has, however, manifested its intent to narrow the scope of the trial court's discretion insofar as the request for disclosure relates to an inquiry that directly implicates one of the statutory exceptions. It is from this perspective that we must analyze the request for disclosure in this case.

## II

The statutory limitations expressly contained in § 46b-124 would have compelled denial of the motion for disclosure of Sheldon G.'s record of juvenile adjudications if Sheldon G. had been eight months younger when he committed the offense for which the movant seeks compensatory damages. Such a victim would have been limited to information about the name of the juvenile, which this movant long ago obtained. The question before us is whether the trial court has residual discretionary authority to release Sheldon G.'s record because of the circumstance that he was sixteen years old when he attacked this victim and has been sentenced as an adult offender for his acts.

The movant argues that Sheldon G.'s age at the time of his crime entirely removes him from the protection of the confidentiality statute. Her principal contention is that Sheldon G.'s adult actions have rendered any protection from the stigma of his juvenile offenses irrelevant. That contention is buttressed, she maintains, by Sheldon G.'s own authorization of the release of his residual medical records, which has, in effect, "attenu-

ated" any remaining privacy interest he might retain in any records that might exist in the juvenile court.[11] The respondent and his father maintain that, in light of all the circumstances, the trial court's judgment was not an abuse of discretion. Although we have indicated our disagreement with the manner in which the trial court exercised its discretion, we agree with its judgment that the movant's request for disclosure could not properly be granted in light of the far-reaching and severe limitations imposed by the statute on the release of juvenile records to the victim of a juvenile offense.

Two considerations support our conclusion that the legislature intended to limit a victim's access to the juvenile records of an adult. First, § 46b-124 contains a strong presumption that juvenile records should

---

[11] The movant also contends that the respondent effectively waived the protection of General Statutes § 46b-124 by failing to object to the release of his juvenile records when the motion was first argued in the court below. Counsel for Sheldon G. was not present at the hearing on the motion below, but counsel for Sheldon G.'s father was present and objected to the release of the records. At oral argument in this court, counsel for Sheldon G. indicated that Sheldon G. has never consented to the release of the juvenile records. We are not persuaded that the failure of the respondent to add his objection to that of his father constitutes a waiver of the statute's protection. The judges of the juvenile courts have long construed the confidentiality requirements of § 46b-124 and its predecessor statutes to require the written consent of the juvenile and of his parent, if he is still a minor, to waive the protection of the statute. That requirement has been expressly stated in the Practice Book since 1963. Practice Book, 1963, § 1137 (now in amended form as Practice Book § 1061). When the legislature was considering the 1969 amendment that strengthened the confidentiality requirements, a spokesperson for the juvenile court judges informed the judiciary committee that the court would continue to require written consent from the juvenile before releasing information from juvenile records, even after the juvenile reached adulthood, in order to preserve the confidentiality of the records to the fullest extent possible. See Conn. Joint Standing Committee Hearings, Judiciary and Governmental Functions, Pt. 1, 1969 Sess., p. 50, remarks of Judge Margaret C. Driscoll. Because Sheldon G. has never provided express written consent to the release of his juvenile court records, we conclude that he has not waived his right to assert the protection of the statute.

remain confidential after a juvenile has reached the age of sixteen, subject to certain mandatory exceptions for the purposes of adult sentencing, regardless of the juvenile's subsequent criminal activity. Second, in determining whether the cloak of confidentiality should be lifted for persons who have no constitutional or statutory right to inspect a juvenile's records, the court can appropriately consider the nature of the information that is generally contained in juvenile records and the privacy interests implicated therein.

### A

A basic principle of statutory construction requires that a statute should "be considered as a whole, with a view toward reconciling its separate parts in order to render a reasonable overall interpretation." *Ganim* v. *Roberts,* 204 Conn. 760, 763, 529 A.2d 194 (1987); see also *Peck* v. *Jacquemin,* 196 Conn. 53, 63, 491 A.2d 1043 (1985); *In re Juvenile Appeal (83-CD),* 189 Conn. 276, 288–89, 455 A.2d 1313 (1983). "Our task is to construe a statute as a whole and to harmonize its disparate sections within the bounds of reason." *State* v. *Gonzalez,* 210 Conn. 446, 451, 556 A.2d 137 (1989). It is appropriate, therefore, to consider the language and legislative policies of related passages in § 46b-124 to determine the boundaries of the court's discretion in this instance.

The provisions in § 46b-124 regarding use of delinquency records in adult criminal proceedings shed light on the legislature's intent that juvenile records remain confidential even when the person whom they concern has reached an age beyond the jurisdiction of the juvenile court. Immediately following the provisions granting the court discretionary authority to permit disclosure of a juvenile's name to the victim of his offense, § 46b-124 contains two provisions[12] requiring

---

[12] General Statutes § 46b-124 (a) provides in relevant part: "The delinquency records or any part thereof of any person who has not attained the

the court to make the delinquency records for any person under the age of twenty-one available to the Superior Court for use in sentencing or in determining the availability of youthful offender status and to adult probation officers who must prepare presentencing investigation reports. Implicit in this legislative directive is the presumption that the general rule of confidentiality established in § 46b-124 requires an express exception to permit the potentially prejudicial use of juvenile records, even though the former juvenile has been found guilty of criminal acts after reaching the age of sixteen and thus may have an "attenuated" reputational interest in the confidentiality of such records.

Nothing in these provisions suggests that the legislature intended to open juvenile records for public inspection in these circumstances; the limited purpose of the exceptions, according to the statement of purpose accompanying the bill that created them, was "[t]o provide that juvenile court records and records of youthful offenders be open to judges for sentencing of persons convicted of very serious crimes or adjudged youthful offenders so that the court may have knowledge of a history of anti-social actions." Proposed Senate Bill No. 361, 1977 Jan. Sess., p. 1. The narrow purpose of these exceptions indicates that the legislature intended the general rule protecting the confidentiality of juvenile records to prevail despite subsequent convictions for "very serious crimes" in adult criminal proceedings.

age of twenty-one shall also be available to any judge of said court for consideration in sentencing such person if he has been convicted of a felony as defined in section 53a-25 or in deciding whether or not to grant youthful offender status to such person if he has committed a felony for which youthful offender status may be granted. Such delinquency records or any part thereof of a person who has not attained the age of twenty-one shall also be available to an adult probation officer, if requested by him, for the purpose of the investigation required under section 54-76d or 54-91a with respect to the sentencing of such person or the granting of such youthful offender status."

## B

In order to test the validity of the movant's contention that no significant privacy interest survives the respondent's authorization of the release of his medical records, we must examine the nature of the privacy interests implicated in the records that are protected by § 46b-124. By its express terms, § 46b-124 (a) protects the confidentiality of "[a]ll records of cases of juvenile matters as defined in section 46b-121, or any part thereof, including studies and reports by probation officers, social agencies and clinics." "Juvenile matters," as defined in General Statutes § 46b-121,[13] include not only delinquency proceedings, but also all proceedings concerning "uncared-for, neglected or dependent children and youth," proceedings concerning the termination of parental rights, and matters concerning families with service needs. The Superior Court for Juvenile Matters has broad authority, under General Statutes §§ 46b-121, 46b-129 (c), and 46b-134,[14] to order not

---

[13] General Statutes § 46b-121 provides in relevant part: "Juvenile matters include all proceedings concerning uncared-for, neglected or dependent children and youth and delinquent children within this state, termination of parental rights of children committed to a state agency, matters concerning families with service needs and contested termination of parental rights transferred from the probate court . . . . In such juvenile matters, the superior court shall have authority to make and enforce such orders directed to parents . . . guardians, custodians or other adult persons owing some legal duty to a child or youth therein, as it deems necessary or appropriate to secure the welfare, protection, proper care and suitable support of a child or youth subject to its jurisdiction or otherwise committed to or in the custody of the commissioner of children and youth services. Said court shall also have authority to grant and enforce injunctive relief, temporary or permanent in all proceedings concerning juvenile matters."

[14] General Statutes § 46b-129, entitled "Commitment of child or youth. Petition for neglected, uncared-for, dependent child or youth," provides in relevant part: "(c) When a petition is filed in said court for the commitment of a child or youth, the commissioner of children and youth services shall make a thorough investigation of the case and shall cause to be made a thorough physical and mental examination of the child or youth if requested

only the juvenile but also his parent or guardian to submit to extensive physical and mental examinations. Prior to the disposition of any delinquency case, the court is required to order an investigation of the "home conditions, habits and character" of the parents or guardian of an affected juvenile. General Statutes § 46b-134. The records of these investigations and examinations become part of the "records of cases of juvenile matters" and are protected from public disclosure only by the confidentiality provisions of § 46b-124.

The legislature has implicitly recognized the privacy interest of a juvenile's family members in such records in at least one context. Section 46b-124 provides, in relevant part, that records of cases in juvenile matters "shall be available . . . to an adult adopted person in accordance with the provisions of part II of chapter 778." Part II of chapter 778, codified as General Statutes § 45-68a et seq., in turn provides a procedure that balances the desire of an adult adopted person to obtain information about his genetic parents against the privacy interests of the genetic parent whose parental rights were terminated. The statute generally

by the court. The court after hearing on the petition and upon a finding that the physical or mental ability of a parent or guardian to care for the child or youth before the court is at issue may order a thorough physical or mental examination, or both, of the parent or guardian whose competency is in question. . . ."

General Statutes § 46b-134 provides in relevant part: "Prior to the disposition of the case of any child found to be delinquent, investigation shall be made of the facts as herein specified by the probation officer . . . . Such investigation shall consist of an examination of the parentage and surroundings of the child, his age, habits, and history, and shall include also an inquiry into the home conditions, habits and character of his parents or guardians. . . . The court shall, when it is found necessary to the disposition, cause a complete physical or mental examination, or both, to be made of the child . . . . Such information shall include physical and psychological diagnoses and may include medical, psychiatric, neurological, learning disability diagnoses and such other diagnoses as the court deems necessary."

requires the consent of the genetic parent in order for the court to disclose that parent's identity. See General Statutes § 45-68j (c).[15] The limitations thus imposed on an adult's access to information contained in juvenile court records concerning his own infancy and his own genetic parents suggest that the legislature has considered interests other than those of the individual who is ostensibly the subject of the court's records.[16]

We do not suggest that the legislature intended, in § 46b-124, to create a statutory privilege against disclosure of juvenile records for family members of the child who is the subject of proceedings in juvenile matters. We do conclude, however, that it is appropriate to consider the nature of the information generally contained in juvenile records for the limited purpose of

---

[15] General Statutes § 45-68j (c) provides in relevant part: "Any information tending to identify the genetic parents shall not be disclosed unless written consent is obtained from each genetic parent who was party to the legal proceedings in the termination of parental rights. . . . Any information tending to identify any adult blood or adoptive relative other than a genetic parent shall not be disclosed unless written consent is obtained from such adult blood or adoptive relative . . . ."

[16] In an analogous context regarding the disclosure of psychiatric records also protected by a confidentiality statute, this court has observed that there are "strong policy reasons" for maintaining the confidentiality of files containing highly personal information about family members whose conditions are not at issue. State v. Storlazzi, 191 Conn. 453, 458, 464 A.2d 829 (1983). "Such records often will contain sensitive and private material from and about other members" of the subject's family; id.; and such material should not be disclosed unless a compelling need is shown. In Storlazzi, the court concluded that a criminal defendant's constitutionally protected right to cross-examine a key state's witness required the court to conduct an in camera examination of the witness's psychiatric records to determine whether anything in those records suggested the witness's inability to "recall and relate the truth." Id. In the present case, as the trial court correctly observed and the movant does not dispute, the movant's interest in Sheldon G.'s alleged juvenile records does not implicate any constitutionally protected right. In addition, the movant has not explored alternative avenues of discovery that are readily available to her. Under these circumstances, the trial court was correct in concluding that it had no duty to conduct an in camera review of any records it might locate concerning Sheldon G.

determining whether the confidentiality of such records should survive after the juvenile directly concerned has reached an age beyond the jurisdiction of the juvenile court. Such considerations persuade us that the privacy interests protected by § 46b-124 are not entirely "attenuated" by the respondent's release of medical records.

With these statutory policy concerns in mind, we turn now to examine the particular request for disclosure that is before us. The movant in this case has sought access to any and all records concerning the respondent that might be found in records of juvenile matters. She simply argues that she should be allowed to examine the records because they "may well disclose evidence or lead to evidence that the [respondent's] parent long had knowledge of his son's aberrant sexual conduct."[17] Counsel for the movant acknowledged at oral argument in this court that the movant had not yet sought to depose any of the parties in this action or to make use of the medical authorizations provided by the respondent to secure information from the service providers who worked directly with him. Counsel for the movant contended in this court that nothing in § 46b-124 requires a litigant to exhaust other means of discovery before seeking access to information contained in court files. We disagree. The strong presumption of confidentiality of juvenile records established in § 46b-124 and the privacy interests implicated therein justify a narrow construction of the discretion afforded a trial court to release information without the express written consent of the parties concerned. The legislative policy underlying the statute requires

[17] It is doubtful that any civil litigant pursuing a claim against a juvenile or his family could establish a need compelling enough to persuade a court to allow the litigant unrestricted access to all the information contained in juvenile records. At most, on a sufficient showing of exhaustion of other sources of information, the litigant might seek an in camera review by the court to determine the existence of specific evidence.

that a litigant demonstrate far more than a ''bona fide good faith interest'' to obtain information from a juvenile's files.

The present language and structure of § 46b-124 reflect the legislature's frequent reconsideration of the competing interests involved in protecting the confidentiality of records regarding juveniles who have caused harm to others. The statute denies the victim of a juvenile offense access to any information from the juvenile records other than the disposition of the case and, in two circumstances, the identity of the juvenile. This carefully limited exception represents the legislature's considered judgment that compilations of highly sensitive records by the order and authority of the Superior Court for Juvenile Matters should not be regarded as a vehicle for civil discovery. Although the court has some residual discretion to order disclosure of records in circumstances not precisely addressed by the statute, its discretion must be informed by the policies that the statute is intended to advance. Because the legislature has limited the access of victims to juvenile records while a child is within the jurisdiction of the Superior Court for Juvenile Matters, and because it has implied a presumption that the confidentiality of juvenile records survives the juvenile's attainment of majority, we conclude that only a showing of compelling need could justify nonconsensual disclosure of any information contained in juvenile records for the purposes of civil litigation involving an adult who was formerly the subject of adjudications in the Superior Court for Juvenile Matters. The movant in this case has conceded that alternative means of discovery are readily available. In these circumstances, therefore, we hold that, at least until other alternatives have been exhausted, it would have been an abuse of discretion

for the trial court to have granted this movant access to information from juvenile files beyond that which she has already received.

The judgment of the trial court is affirmed.

In this opinion the other justices concurred.