[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, David Woolley (Woolley), has filed a two count complaint alleging in the first count breach of contract, and in the second and third counts, a violation of § 31-72.
The complaint alleges that in 1976, Woolley, Vice-President CT Page 7340 of Corporate Banking in the Hartford Corporate Loan Office, began employment with the defendant, Bank of Boston/Connecticut (Bank). Woolley received good or excellent job performance appraisals for the period 1976 through 1990. However, on November 19, 1991, the Bank informed Woolley that his employment would be terminated as of January 2, 1992, because his work was no longer satisfactory.
The first count of the plaintiff's amended complaint alleges breach of contract. Specifically, Woolley alleges that the Bank dismissed him for poor performance to avoid paying him severance pay. The allegations underlying the Bank's alleged breach of contract are that The Bank had a long-standing policy of awarding severance pay to employees it dismissed because of force reductions. This policy was repeatedly disseminated and widely known throughout management of the Bank. This policy was in effect throughout Woolley's entire tenure with the bank, which was over fifteen years. Consequently, it is alleged, the Bank's severance pay policy induced Woolley to rely on it.
In the second and third counts of the complaint, Woolley alleges the Bank's conduct violated sections 31-72 and 31-76k of the General Statutes.
The Bank has filed a motion to strike the amended complaint. The Bank also moved to strike paragraphs three and four of the plaintiff's prayer for relief, which ask for double damages and attorney's fees under General Statutes § 31-72.
"The purpose of a motion to strike is to `contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted.'" (Citations omitted.) Gordon v. Bridgeport Hous. Auth., 208 Conn. 161, 170,544 A.2d 1185 (1988). "The motion to strike . . . admits all facts well pleaded." (Citations omitted.) Ferryman v. Groton,212 Conn. 138, 142, 561 A.2d 432 (1989). The court may look at "the facts necessarily implied and fairly provable under the allegations . . . It does not include, however, the legal conclusions or opinions stated in the complaint." (Citations omitted.) Forbes v. Ballaro, 31 Conn. App. 235, 239,624 A.2d 389 (1993). In deciding a motion to strike "the court must construe the facts alleged in the complaint in the manner most favorable to the plaintiff." (Citations omitted.) Rowe v.Godou, 209 Conn. 273, 278, 550 A.2d 1073 (1988). CT Page 7341
 I.
An implied-in-fact contract is an agreement that may be inferred from the conduct of the parties. D'Ulisse-Cupo v.Board of Directors of Notre Dame High School, 202 Conn. 206,211-12 n. 2, 520 A.2d 217 (1987). "Absent specific contract language, whether there was a contract, and the terms of that contract, are questions of fact. (Citations omitted.)Christensen v. Bic Corp. , 18 Conn. App. 451, 454, 454-55,558 A.2d 273 (1989). If no actual agreement between the parties is apparent, the plaintiff may still be able to recover for breach of contract under the doctrine of promissory estoppel.D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, supra, 211-12 n. 2.
Under the doctrine of promissory estoppel, "`[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.'" Id. "A fundamental element of promissory estoppel, therefore, is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance." Id.
The court holds that the plaintiff has alleged a cause of action for breach of an implied-in-fact contract. The Bank's longstanding severance pay policy was in effect when Woolley accepted employment and throughout his entire remaining at the Bank. Even if the court were to find no actual agreement between the parties relating to the severance pay policy, Woolley may still state a cause of action under the doctrine of promissory estoppel.
The Bank's long-standing severance pay policy constituted a promise to Woolley that if the Bank dismissed him because of a force reduction, it would award him severance pay. Moreover, the Bank should reasonably have expected Woolley to rely on this promise, especially since the Bank gave Woolley good or excellent job performance appraisals from the time of his employment in 1976 up to 1990. Since it is alleged that the Bank dismissed Woolley for poor performance to avoid paying him severance pay, Woolley has alleged a promise of such benefits which may be enforced against the Bank. CT Page 7342
Accordingly, the court denies the motion to strike Count One of the amended complaint.
 II.
The defendant has also moved to strike the second and third counts of the plaintiff's amended complaint on the ground that the allegations of those counts fail to allege a violation of public policy, specifically, the Bank asserts that there is no public policy against discharging at will an employee without severance pay.
The plaintiff, however, does not claim an unlawful termination of employment, but rather he claims a violation of General Statutes § 31-72, which prohibits an employer from withholding benefits from an employee if the employer terminates the employee's employment. He points to Section 31-76k, which prohibits an employer from withholding "accrued fringe benefits," and argues that severance pay is such an accrued fringe benefit.
General Statutes § 31-72 does now provide for double damages and attorney's fees when "an employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to31-71i, inclusive, or fails to compensate an employee inaccordance with section 31-76k . . . ." (Emphasis added.) The court holds that a violation of § 31-76k may constitute a violation of Section 31-72, since § 31-72 was amended prior to the plaintiff's discharge. Thus, ABC Office Equip. v. RoyalConsumer Business Prod., 721 F. Sup. 1557 (D.C. Conn. 1989) is not controlling under the facts alleged.
In Fulco v. Norwich Roman Catholic Diocesan Corp. , 27 Conn. App. 800
at 803, appeal dismissed 226 Conn. 404, the Appellate Court has pointed out that General Statutes § 31-76k provides for the collection of certain accrued fringe benefits where an employer policy provides for the payment of accrued benefits upon termination. Section 31-76k, however, does not itself name severance pay as an "accrued fringe benefit." Moreover, the Connecticut Supreme Court has yet to determine whether severance pay falls within the ambit of the statutory term "accrued fringe benefit."
When construing a statute, the court's goal is to "`ascertain and give effect to the apparent intent of the legislature.'" CT Page 7343 (Citations omitted.) In re Sheldon G., 216 Conn. 563,568, 583 A.2d 112 (1990). The court looks first at the words of the statute. Id. If the statutory language is ambiguous, the court will look at the statute's legislative history and the statute's purpose. Id., 569.
In looking first at the words of the statute, 31-76k
states that
 [i]f an employer policy . . . provides for the payment of accrued fringe benefits upon termination, including but not limited to paid vacations, holidays, sick days and earned leave, and an employee is terminated without having received such accrued fringe benefits, such employee shall be compensated for such accrued fringe benefits . . . in the form of wages in accordance with such agreement or policy . . . .
(Emphasis added.) The statute's plain language indicates that "accrued fringe benefits" are not limited to those specifically listed. Under the rule of ejusdem generis, "`unless a contrary intent appears, where general terms are followed by specific terms in a statute, the general terms will be construed to embrace things of the same general kind or character as those specifically enumerated . . . .'" (Citations omitted.)Cheshire Mortgage Service, Inc. v. Montes, 223 Conn. 80, 104
n. 31, 612 A.2d 1130 (1992).
It appears to the court that the general term "accrued fringe benefits" embraces severance pay because severance pay is of the same general kind or character as those specific items listed in § 31-76k, i.e., paid vacations, holidays, sick days and earned leave. Our Supreme Court has characterized severance pay as "`a kind of accumulated compensation for past services and a material recognition of their past value.'" (Citations omitted.) Mace v. Conde Nast Publications, Inc., 155 Conn. 680,683, 237 A.2d 360 (1967). Paid vacations, holidays, sick days and earned leave also constitute "`a kind of accumulated compensation for past services and a material recognition of their past value.'" Id.
The wording of § 31-76k and the purpose of § 31-76k indicate that the term "accrued fringe benefits" includes severance pay.
In order to establish a violation of § 31-76k, the plaintiff CT Page 7344 is required to show the existence of an "employer policy" of payment for accrued fringe benefits at the time of his job termination. The statutory term "`employer policy' relates not to the employer's intent with regard to a single employee, but to its intentions regarding either its employees generally or discrete classes of employees." Fulco v. Norwich Roman CatholicDiocesan Corp. , supra.
The plaintiff's amended complaint alleges that the defendant engaged in a general practice of awarding severance pay to workers it discharged because of force reductions. This, the plaintiff alleges an employer policy.
Accordingly, since the plaintiff has alleged a violation of § 31-76k, and § 31-72, the motion to strike Counts Two and Three is denied.
The defendant has also moved to strike paragraphs three and four in the prayer for relief of the plaintiff's amended complaint, which request relief under § 31-72. Here, again, the court must deny the defendant's motion to strike paragraphs three and four in the prayer for relief.
/s/ McDonald, J. McDONALD