# IN RE AMY H.*
## (AC 17889)

Hennessy, Vertefeuille and Daly, Js.

Argued September 30—officially released December 14, 1999

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Raymond J. Rigat*, for the appellant (respondent father).

*Susan Quinn Cobb*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Carolyn K. Querijero*, assistant attorney general, for the appellee (petitioner).

*Opinion*

HENNESSY, J. The respondent father[1] appeals from the judgment of the trial court terminating his parental rights with respect to his child, Amy H. On appeal, the respondent claims that the court improperly (1) terminated his parental rights on the statutory grounds of failure to achieve personal rehabilitation, abandonment and denial by acts of omission or commission of the care, guidance or control necessary for the child's welfare, (2) drew a negative inference from his refusal to participate in a court-ordered psychological examination, (3) relied on *Yontef* v. *Yontef*, 185 Conn. 275, 440 A.2d 899 (1981), for authority in entering sua sponte protective orders regarding visitation and (4) ordered the foster parents to append the court's memorandum of decision to any requests for a protective order to restrain the respondent from contacting them. We vacate the judgment of the trial court in part.

The following facts and procedural history are relevant to this appeal. The respondent and JoAnn B. are the parents of Amy H. The department of children and families (department) became involved early in Amy's life when it found, shortly after her birth, that she was

---

[1] Although her parental rights also were terminated, Amy's mother did not appeal the judgment of the trial court. We refer in this opinion to the respondent father as the respondent.

at risk due to JoAnn's addiction to heroin and alcohol. In 1995, when Amy was fifteen months old, JoAnn was arrested after police observed her and her brother dealing drugs. The arrest was effected after JoAnn and her brother led the police on a motor vehicle chase with Amy in the car. The police found cocaine and drug paraphernalia in the car in clear view and reach of Amy. Thereafter, the police contacted the department, which placed Amy in foster care. At the time of JoAnn's arrest, the respondent was incarcerated. The juvenile court adjudicated the child neglected on February 15, 1995. Amy has since remained in foster care with the respondent's sister and husband. On January 22, 1997, the commissioner of children and families (commissioner) filed the petition to terminate parental rights.

The respondent has an extensive criminal record and has been in prison for most of Amy's life. The court noted that he had been arrested thirty-three times as an adult, including arrests made after the petition for termination of parental rights was filed by the commissioner. Despite the availability of parenting programs and anger and stress management classes in prison, the respondent refused to attend any of them. He also refused substance abuse counseling despite the fact that he was found to have the highest level of drug dependency.

The respondent refused to cooperate with department social workers or the court-appointed evaluator, who attempted to assess his parenting abilities and to compile his social history. In addition, the respondent was belligerent and rude and used profanity during the termination of parental rights hearing.

After the termination hearing, the court determined that the respondent "failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time . . . [he] could assume

a responsible position in the life of the child," that the respondent committed acts of omission and commission that "denied [the child] the care, guidance or control necessary for [her] physical, educational, moral or emotional well-being," and that Amy had been abandoned by the respondent in the sense that he failed to maintain a reasonable degree of responsibility as to her welfare. After making those factual findings, the court concluded that it was in the best interest of the child to terminate the respondent's parental rights.

" 'The hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. See Practice Book § 1042.1 et seq. [now § 33-1 et seq.]. In the adjudicatory phase, the trial court determines whether the statutory ground for termination of parental rights exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether the termination of parental rights is in the best interests of the child. *In re Maximina V.*, 44 Conn. App. 80, 82–83, 686 A.2d 1005 (1997).' *In re Drew R.*, 47 Conn. App. 124, 127, 702 A.2d 647 (1997)." *In re Pascacio R.*, 52 Conn. App. 106, 109, 726 A.2d 114 (1999).

" 'The standard for review on appeal [from a termination of parental rights] is whether the challenged findings are clearly erroneous. *In re Luis C.*, [210 Conn. 157, 166, 554 A.2d 722 (1989)]; *In re Christina V.*, 38 Conn. App. 214, 223, 660 A.2d 863 (1995).' . . . 'On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . . Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling.' " (Citation

omitted.) *In re Pascacio R.*, supra, 52 Conn. App. 109–10.

## I

The respondent claims[2] that there was insufficient evidence to terminate his parental rights on the ground of failure to achieve personal rehabilitation pursuant to General Statutes (Rev. to 1997) § 17a-112 (c) (3) (B).[3] "Personal rehabilitation as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent." (Internal quotation marks omitted.) *In re Christina V.*, supra, 38 Conn. App. 220. "[Section 17a-112 (c) (3) (B)] requires parental

[2] The respondent also claims that the court improperly terminated his parental rights on the grounds of abandonment and having committed acts of commission or omission that denied the child the care, guidance or control necessary for her well-being pursuant to General Statutes (Rev. to 1997) § 17a-112 (c) (3) (A) and (C), respectively. "To prevail, the [respondent] must successfully challenge all three of the bases of the judgment terminating [his] parental rights. If any of the grounds relied on by the trial court are upheld on appeal, the termination of parental rights must stand." *In re Kezia M.*, 33 Conn. App. 12, 17, 632 A.2d 1122, cert. denied, 228 Conn. 915, 636 A.2d 847 (1993); see also *In re Juvenile Appeal (84-BC)*, 194 Conn. 252, 258, 479 A.2d 1204 (1984). We conclude that the ground of failure to achieve rehabilitation has been proven by clear and convincing evidence. Accordingly, we need not address the other claims involving abandonment and denial of necessary care, guidance or control.

Furthermore, the claim by the respondent that the court drew a negative inference from the fact that he did not participate in a court-ordered psychological examination is not supported by the record.

[3] General Statutes (Rev. to 1997) § 17a-112 (c) provides in relevant part: "The Superior Court, upon hearing and notice . . . may grant a [termination] petition filed pursuant to this section if it finds by clear and convincing evidence (1) that the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent . . . (2) that termination is in the best interest of the child, and (3) that over an extended period of time, which . . . shall not be less than one year . . . (B) the parent of a child who has been found by the Superior Court to have been neglected or uncared for in a prior proceeding has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

rights to be terminated if by clear and convincing evidence it is established that the respondent's level of rehabilitation falls short of the level which would encourage the belief that within a reasonable time, considering the age and needs of the child, the parent could assume a responsible position [in the life of the child]. . . . Thus, the statute requires the trial court to analyze the respondent's rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a reasonable time." (Internal quotation marks omitted.) *In re Hector L.*, 53 Conn. App. 359, 366–67, 730 A.2d 106 (1999).

The court found by clear and convincing evidence that the respondent failed to achieve sufficient personal rehabilitation as required by the statute. In its memorandum of decision, the court noted that the respondent had been in jail for most of Amy's life. Furthermore, the respondent did not take advantage of any substance abuse and parenting programs available to him to achieve personal rehabilitation. Although the respondent did demand visitation with Amy, the court found that the visitation was "decidedly one-sided in favor of [the respondent]" as the respondent would want to spend most of the time arguing with the department worker who attended each visit instead of paying attention to Amy. In light of these findings, we conclude that the trial court's determination that the respondent failed to achieve a level of rehabilitation that would encourage the belief that within a reasonable time he could assume a responsible position in Amy's life was not clearly erroneous.

In addition, when considering whether the termination was in the best interest of Amy, the court found that since the filing of the petition, the respondent had committed sixteen discipline infractions of the highest order and ten lower class infractions during his most recent incarceration. As a consequence, the respondent

had been denied early release from prison, thus precluding himself from parenting Amy. The court also noted that the respondent demonstrated an absence of concern for Amy's welfare and had not been available to provide her a "permanent, nurturing and safe environment." We hold that the court's conclusion that the termination of parental rights was in the best interest of Amy was not clearly erroneous.

## II

The respondent next claims that the trial court had no authority to enter, sua sponte, protective orders regarding visitation between Amy and the respondent under *Yontef* v. *Yontef*, supra, 185 Conn. 275. Specifically, the court ordered that no visitation would be granted pending appellate resolution of the case and subsequent retrial if ordered. We hold that the respondent cannot successfully challenge the visitation order because he did not move for a stay of execution.

Practice Book § 61-11 provides in relevant part that "proceedings to enforce or carry out the judgment shall be automatically stayed until the time to take an appeal has expired; if an appeal is filed, such proceedings shall be stayed until the final determination of the cause . . . . This section shall not apply . . . to juvenile matters brought pursuant to chapters 26 through 35 [of the Practice Book, which govern procedure in juvenile matters] . . . ."

In the present case, the respondent did not move for a stay of execution. Hence, his visitation rights were extinguished when his parental rights were terminated. See Practice Book § 61-11. Accordingly, we hold that the respondent cannot successfully challenge the court's visitation order because the order terminating his parental rights was not stayed.

## III

The respondent's final claim is that the trial court improperly directed that a copy of its memorandum of decision be attached to any request by the foster parents for a restraining order preventing the respondent from contacting the foster parents, their children or Amy. We agree.

General Statutes § 46b-124 (a) provides in relevant part that "[a]ll records of cases of juvenile matters, as defined in section 46b-121 . . . or any part thereof . . . shall be confidential and for the use of the court in juvenile matters, and open to inspection or disclosure to any third party . . . only upon order of the Superior Court . . . ." Our Supreme Court has held that "only a showing of compelling need could justify nonconsensual disclosure of any information contained in juvenile records for the purposes of civil litigation involving an adult who was formerly the subject of adjudications in the Superior Court for Juvenile Matters." *In re Sheldon G.*, 216 Conn. 563, 584, 583 A.2d 112 (1990). Although *In re Sheldon G.* involved a delinquency proceeding, the principles of confidentiality embodied in § 46b-124 and discussed in *In re Sheldon G.* are analogous and applicable to the present case. Thus, only a showing of compelling need can justify the disclosure of the confidential materials in a parental termination proceeding.

The court noted in *In re Sheldon G.*, supra, 216 Conn. 580–81, that "[t]he Superior Court for Juvenile Matters has broad authority . . . to order not only the juvenile but also his parent or guardian to submit to extensive physical and mental examinations. Prior to the disposition of any delinquency case, the court is required to order an investigation of the 'home conditions, habits and character' of the parents or guardian of an affected juvenile. General Statutes § 46b-134. The records of

these investigations and examinations become part of the 'records of cases of juvenile matters' and are protected from public disclosure only by the confidentiality provisions of § 46b-124." Similarly, in parental termination hearings, the court has broad authority to order the child and the child's parents to submit to mental examinations. See General Statutes § 45a-717 (d).[4] The court also has broad authority to request that the department investigate the parents and the child to gather information that may be relevant to the court's determination as to whether to terminate parental rights. See General Statutes § 45a-717 (e) (1).[5] Similar to the information gathered in delinquency proceedings, the examinations and investigations gathered for a termination proceeding are protected only by the confidentiality provisions of § 46b-124.

Although the court has discretion to order disclosure of records, "its discretion must be informed by the policies that the statute is intended to advance." *In re Sheldon G.*, supra, 216 Conn. 584. While § 46b-124 does

[4] General Statutes § 45a-717 (d) provides in relevant part: "Upon finding at the hearing or at any time during the pendency of the petition that reasonable cause exists to warrant an examination, the court, on its own motion or on motion by any party, may order the child to be examined at a suitable place by a physician, psychiatrist or licensed clinical psychologist appointed by the court. The court may also order examination of a parent or custodian whose competency or ability to care for a child before the court is at issue. . . ."

[5] General Statutes § 45a-717 (e) (1) provides in relevant part: "The court may, and in any contested case shall, request the Commissioner of Children and Families or any child-placing agency licensed by the commissioner to make an investigation and written report to it, within ninety days from the receipt of such request. The report shall indicate the physical, mental and emotional status of the child and shall contain such facts as may be relevant to the court's determination of whether the proposed termination of parental rights will be in the best interests of the child, including the physical, mental, social and financial condition of the biological parents, and any other factors which the commissioner or such child-placing agency finds relevant to the court's determination of whether the proposed termination will be in the best interests of the child. . . ."

not create "a statutory privilege against disclosure of juvenile records for family members of the child who is the subject of proceedings in juvenile matters," it is, however, "appropriate to consider the nature of the information generally contained in the juvenile records" to decide whether the records should remain confidential. Id., 582.

In the present case, the court's memorandum of decision provides detailed analysis of the history, psychological evaluations and studies by the department concerning Amy, JoAnn and the respondent. Strong public policy concerns exist for maintaining the confidentiality of the highly personal information in this memorandum of decision. See, e.g., id.; *State* v. *Storlazzi*, 191 Conn. 453, 458, 464 A.2d 829 (1983) (regarding disclosure of psychiatric records). Considering the nature of the information in the memorandum of decision, we hold that without a showing of compelling need, the court's decision cannot be released in the manner ordered by the court.[6] There are certainly alternative means of obtaining information for any such restraining order that would be readily available. We hold, therefore, that it was an abuse of discretion for the court to have ordered the release of the memorandum of decision on the basis of the anticipation that the respondent would attempt to contact the foster parents, their children or Amy in a manner that would require the foster parents to seek a restraining order. Accordingly, we vacate the court's order authorizing and directing the publication of the memorandum of decision.

---

[6] Under the current policy of the judicial branch, decisions in juvenile matters are released for publication, but redacted to maintain the confidentiality of those involved in the case. Under the order of the court in this case to attach the memorandum of decision to a request for a restraining order, the names and addresses of the parties involved in the restraining order would necessarily be identified as those in the memorandum of decision, thereby breaching the confidentiality required by § 46b-124 (a).

The judgment is vacated in part and the case is remanded with direction to render judgment as on file except as modified to eliminate the order authorizing the release of the trial court's memorandum of decision.

In this opinion the other judges concurred.